**TERRILL MANOR ASSOCIATES,**
**Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and ELCI Realty Company, Inc.,**
**Defendants.**

**Civ. A. No. 79–1068.**

United States District Court,
D. New Jersey.

Aug. 12, 1980.

William L. Brach, East Orange, N.J., for plaintiff.

Jerome B. Simandle, Asst. U.S. Atty., Robert J. Del Tufo, U.S. Atty., for the District of New Jersey, Trenton, N.J., for defendants.

## OPINION

COOLAHAN, Senior District Judge.

This an action by plaintiff Terrill Manor Associates (hereinafter "TMA") against the United States Department of Housing and Urban Development (hereinafter "HUD") and ELCI Realty Company, Inc. (herein-

---

1. 28 U.S.C. § 2201.

2. ELCI Realty was properly served but failed to appear. Accordingly, a default judgment against it was heretofore entered.

after "ELCI Realty"). As against HUD, TMA seeks a declaratory judgment[1] that plaintiff is not obligated to HUD on an alleged sum due on a mortgage held by HUD. TMA also desires that HUD be enjoined from foreclosing said mortgage due to the alleged deficiency and that HUD be ordered to grant final approval of the transfer of physical assets of the mortgaged premises to plaintiff.[2] HUD moves to dismiss the action against it for lack of subject matter jurisdiction[3] on the ground that the suit is barred by the doctrine of sovereign immunity. For the reasons which follow, the Court concludes that the motion to dismiss should be granted.

This suit concerns an apartment complex located in Hackensack, New Jersey, commonly known as "Terrill Manor." HUD originally took a mortgage on Terrill Manor from co–defendant ELCI Realty on January 29, 1971 in the amount of $1,043,200.00. On May 9, 1977, ELCI Realty and TMA entered into a contract for the sale of Terrill Manor to plaintiff. The contract provided that "the total purchase price is to be $350,000.00 over the existing mortgage at closing."

On or about September 15, 1977, the HUD Newark Area Office issued plaintiff a letter of preliminary approval of the proposed sale of Terrill Manor to TMA. The letter provided that final approval by HUD of the transfer was subject to certain enumerated conditions, among which was the requirement that "[a]t closing, the delinquent mortgage held by HUD must be brought current by either the seller or purchaser." Ex. B to the Affidavit of James F. Smith.

The gravaman of the suit concerns the September 1977 HUD monthly billing notice to ELCI Realty of mortgage payments due. It is uncontested that this notice erroneously understated the amount of interest and principal due to bring the Terrill Manor mortgage current by $29,611.19.

---

3. Rule 12(b)(1), F.R.Civ.P.

TMA alleges[4] that on the day of closing its attorney placed a telephone call to the HUD Newark Area Office to confirm the amount due on the mortgage as stated (incorrectly) in the September billing notice. Plaintiff further alleges that its counsel thereupon was orally informed that the figures in said notice were accurate. See Affidavit of Paul Rosenberg. Although HUD admits that one of its employees telephonically confirmed the figures in the billing notice, it contends that said confirmation was made by a HUD accountant in the agency's Washington, D.C. office. Said accountant by affidavit affirms that he used the most recent billing information and read to plaintiff's attorney the amount indicated therein as the amount then due on the Terrill Manor mortgage. Affidavit of Dana Billingslea.

It is now apparent to all concerned that the misstatement of amount due on the Terrill Manor mortgage resulted from a bookkeeping error by HUD in its June 1977 billing notice to ELCI Realty. Said error was repeated from month to month, resulting in the aforementioned inaccuracy in the September 1977 billing notice. Complaint, ¶ 6. The error was discovered during HUD's subsequent examination of the status of the Terrill Manor mortgage in connection with plaintiff's request that HUD grant final approval to the transfer of the physical assets of Terrill Manor. Complaint, ¶ 6, and Schedule C. Upon the discovery of the error, HUD refused to grant final approval of the transfer until TMA (or ELCI Realty) brought the mortgage current.

In its Complaint, plaintiff alleges that HUD had complete control of the books and records concerning the Terrill Manor mortgage and therefore HUD knew or should have known of the true mortgage figures. TMA further alleges that all parties, including HUD, agreed that the transfer of Terrill Manor to plaintiff should be quickly effectuated inasmuch as ELCI Realty was then in dire financial straits. Complaint, ¶¶ 3, 7. Thus, the Complaint avers that

"HUD knew that plaintiff would rely upon its [September 1977] notice and its confirmation of the accuracy of same." Id., at ¶ 8.

Highly significant to the Court's determination of the instant motion is plaintiff's allegation that it "did rely upon the information supplied by HUD and acted upon this information to its detriment, closing the transfer on the basis of HUD's figures and suffering a loss now claimed by HUD of $29,611.19." Complaint, ¶ 12. Accordingly, plaintiff contends that HUD should be "estopped" from asserting a claim against TMA for the alleged deficiency. Complaint, ¶ 13.

TMA also alleges that HUD has threatened to foreclose its mortgage on the subject premises. Complaint, ¶ 12. No such action, however, has yet been instituted. Finally, because it is pertinent to our resolution of this motion, we repeat TMA's prayer for relief against HUD in full:

"WHEREFORE, plaintiff demands judgment:

A. Declaring that plaintiff is not responsible for payment of the $29,611.14 demanded by HUD;

B. Declaring that HUD is estopped from employing this claim as a basis for denying plaintiff final approval of the transfer of physical assets, foreclosing on the subject premises or taking any other action to collect the said monies claimed by it;

C. Restraining HUD from taking the actions indicated in Paragraph B aforesaid;

D. Requiring HUD to issue a new statement of the mortgage amount recalculating the monies due as a result of the crediting of the $29,611.19 to plaintiff in order that plaintiff will not pay any further monies in this respect than it would have if HUD's figures in its September, 1977 notice were correct.

E. Directing payment to plaintiff of such damages as the Court deems appro-

---

4. For the purposes of this motion, we of course accept as true TMA's allegations.

priate and just including interest and costs."

Complaint, Count I.

HUD grounds its motion to dismiss on the contention that the instant action is one based on HUD's negligent misrepresentation as to the amount due HUD on the Terrill Manor mortgage. If so construed, HUD argues the action is precluded by the specific exception to the waiver of sovereign immunity in the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2680(h), for suits based on misrepresentations.

■ It is well–settled that " 'the United States as sovereign,[5] is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941).

■ The Federal Tort Claims Act is a partial waiver of sovereign immunity for certain tortious acts or failures to act of employees or agencies of the United States, and therefore it must be strictly construed. *See, United States v. Sherwood, supra*, at 590–91, 61 S.Ct. at 771. *See also, United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259, 267 (1979).

■ Contrary to TMA's assertion, it is clear that the seemingly broad waiver of sovereign immunity as to actions against the Secretary of HUD codified in 12 U.S.C.

§ 1702 is not absolute. Rather, the waiver in section 1702 is limited, *inter alia*, by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(a), wherein Congress provided that the FTCA contains the exclusive remedy for the enumerated tortious actions notwithstanding the independent existence of a "sue or be sued" statute. Moreover, the courts have required plaintiff suing HUD under 12 U.S.C. § 1702 to identify an independent statutory basis for conferring competent subject matter jurisdiction. *See, Lindy v. Lynn*, 501 F.2d 1367, 1360 (3d Cir. 1974); *see also, Marcus Garvey Square, Inc. v. Winston Burnett Const. Co. of California, Inc.*, 595 F.2d 1126, 1132 (9th Cir. 1979); *United States v. Gregory Park, Section II, Inc.*, 373 F.Supp. 317, 351 (D.N.J.1974).[6]

The Court finds that TMA's action against HUD can only be construed as a suit seeking relief for a misstatement of material facts by HUD employees upon which TMA relied to its detriment. Plaintiff's allegations against HUD describe: HUD's duty to supply TMA (and ELCI Realty) with accurate information as to the balance due on the Terrill Manor mortgage; breach of that duty by supplying TMA with the incorrect information contained in the September 27th billing notice and subsequently confirming same; the negligence of HUD since it knew or should have known of the inaccuracy of the billing notice; and damages to TMA proximately caused thereby.

In *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), the Supreme Court held that a purchaser of

---

**5.** A suit against an executive agency of the United States, such as the instant one against HUD, generally is construed as a suit against the United States as sovereign if: (1) "the decree would operate against" the sovereign, *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963); or (2) "the judgment sought would . . . interfere with the public administration", *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947); or (3) the judgment sought would "restrain the Government from acting or . . . compel it to act", *Larson v. Domestic & Foreign Commerce Co.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949). *See, Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). The relief TMA seeks

against HUD clearly fits within the second and third categories. Accordingly, the Court finds that the United States is the real party in interest. *See also, Gurzo v. Gregory Park, Inc.*, 99 N.J.Super. 355, 360, 240 A.2d 25 (L.Div.1968).

**6.** "[D]ifficulties arise because two separate distinctions must be made, and are often confused in the case law. In order for the district court to hear this case on the merits, there must be both a waiver of sovereign immunity and a grant of jurisdiction to the district court." *Marcus Garvey Square, Inc. v. Winston Burnett Const. Co., supra*, at 1133. We are here concerned with the former question.

real property induced to rely upon a negligent and inaccurate inspection and appraisal by the Government to purchase the property was barred from recovery by the misrepresentation exclusion to the FTCA, 28 U.S.C. § 2680(h). The *Neustadt* plaintiff unsuccessfully argued that the Government had a duty to provide an accurate appraisal to purchasers of property financed by the Federal Housing Administration. Likewise, TMA here argues that HUD had a duty to transmit an accurate mortgage balance, which putative duty arose in part from TMA's payment of a fee to HUD for its services in reviewing the proposed transfer of Terrill Manor to plaintiff. Nonetheless, the Supreme Court in *Neustadt* found that the plaintiff's claim was founded upon the common law tort of negligent misrepresentation and it further held that 28 U.S.C. § 2680(h) bars suits based upon negligent as well as willful misrepresentations by the Government or its employees. *Id.*, at 701–05, 81 S.Ct. at 1297–99. "While we do not condone carelessness by Government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress used in [28 U.S.C. § 2680(h)] in limiting the scope of the Government's tort liability." *Id.*, at 710–11, 81 S.Ct., at 1302. *See also, Edelman v. Federal Housing Administration*, 382 F.2d 594, 596 (2d Cir. 1967); *United States v. Gregory Park, Section II, Inc., supra*, at 352.

Plaintiff's initial response is that its action is founded upon equitable estoppel, not negligent misrepresentation. However, plaintiff's characterization of its claim is not controlling, as we are required to examine the substance, not the form, of the claim. "Even if a claim purports to be grounded in theories other than misrepresentation the exception set out in 28 U.S.C. § 2680(h) would bar the action if deceit or misrepresentation were a factor relied upon to maintain a suit." *Goodman v. United States*, 324 F.Supp. 167, 172 (M.D.Fla.), *aff'd*, 455 F.2d 607 (5th Cir. 1971) (citations omitted). *Accord, Bor–Son Bldg. Corp. v. Heller*, 572 F.2d 174, 178 (8th Cir. 1978); *Fitch v. United States*, 513 F.2d 1013, 1015

(6th Cir.), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975); *Moon v. Takisaki*, 501 F.2d 389 (9th Cir. 1974); *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959). *See also, Preston v. United States*, 596 F.2d 232, 237–38 (7th Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 228, 62 L.Ed.2d 169 (1979); *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976). It is quite obvious from paragraphs 8–10 of the Complaint that negligent misrepresentations by employees of HUD are "a factor" TMA relies upon in this action against HUD.

Plaintiff's second response to HUD's argument is that its action is akin to a set–off or recoupment against a prospective and threatened foreclosure action by HUD. In *United States v. Shaw*, 309 U.S. 495, 502–04, 60 S.Ct. 659, 662–63, 84 L.Ed. 888 (1940), and its companion case, *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512–13, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940), the Supreme Court clearly determined that by initiating a suit, the Government waives its sovereign immunity as to any set–offs or recoupments diminishing any affirmative recovery otherwise obtainable by the Government. This implicit waiver, however, is quite limited, as such a set–off is only available "to the extent of the government's claim [as] the principle of sovereign immunity deprives the court of jurisdiction to award a counterclaim against the Government beyond the amount of the set–off." *United States v. Bedford Associates*, 618 F.2d 904, 917 (2d Cir. 1980). *Accord, Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967); *In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723, 737–38 (E.D.N.Y.1978); *United States v. Gregory Park, Section II, Inc., supra*, at 351; *United States v. Summ*, 282 F.Supp. 628, 630 (D.N.J.1968) ("the United States, by filing suit against a party, subjects itself to compulsory counterclaims which do not exceed the amount of the Government's own claim").

This Court declines plaintiff's invitation to construe HUD's threat to foreclose upon the Terrill Manor mortgage as an implied

waiver of sovereign immunity as to defenses to such threatened foreclosure. No foreclosure action has yet been instituted; consequently, no implicit waiver of sovereign immunity can be deemed to have been made. Plaintiff's contention that dismissal of the instant declaratory action would necessitate re–litigation of the merits of its "equitable defense" to foreclosure begs the question for two reasons: first, no determination has been made on the merits; and second, HUD has not yet attempted to and indeed may never choose to foreclose.

*United States v. Gregory Park, Section II, Inc., supra*, at 351, upon which TMA principally relies, is not to the contrary. The crucial distinction between that case and this one is self–evident: there, the United States instituted the foreclosure action; here, at best, HUD has merely threatened to foreclose. If and only if HUD files a foreclosure action may the sovereign be deemed to have waived its immunity as to set–offs or recoupments diminishing or even defeating an affirmative recovery by the Government.

In conclusion, the Court finds that TMA's action against HUD relies upon HUD's negligent misrepresentation as a factor in its action and therefore that the instant claim is barred by the principle of sovereign immunity. HUD's motion to dismiss the action against it for lack of subject matter jurisdiction should be granted.[7]

The Court requests that the movant submit an appropriate form of order within two weeks.

7. The Court also finds unpersuasive plaintiff's other theories in support of its argument that the United States has implicitly waived its sovereign immunity as to this action, *i. e.*, that an implicit waiver of sovereign immunity arises from the declaratory and equitable nature of this action and that a waiver is effected by 42 U.S.C. § 3535 (authorizing the Secretary of HUD to institute foreclosure proceedings).